Filed 10/5/21  P. v. Rascon CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>IVAN RASCON,<br><br>     Defendant and Appellant. | A157158<br><br>(Contra Costa County<br> Super Ct. No. 5190047-1) |

Defendant Ivan Rascon appeals from the trial court's sentencing order, imposing a four-year prison term after a jury convicted him of first-degree burglary with a person present.  (See Pen. Code,[1] §§ 459, 667.5, subd. (c).)  Rascon contends that the trial court abused its discretion and violated his constitutional rights by refusing to sever his trial from that of his codefendant, Kenneth Goodman.  He also asserts that the trial court erred by imposing $70 in fees and assessments at sentencing without a finding regarding his ability to pay.  Seeing no error, we affirm.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND[2]

## A.    *December 2018 Residential Burglary*

On December 19, 2018, at approximately 11:00 a.m., Antioch Police Officer Padilla was dispatched to a home on Buchanan Street in Antioch. He contacted the resident, A.S., who was nervous and shaking. She stated she was in the backyard with her baby when she heard noises outside the yard's side fence. She walked into her house and, through a window, witnessed a man trying to climb over her security gate. She called the police. The man was attempting to crawl through a gap above the iron security gate and below the decorative finish attached to the porch roof. The top of his body was through the gap up to his chest. He was unable to get into the enclosed porchway, where a small package was located. When A.S. confronted him, he walked away.

A.S. then walked up to the security gate and looked toward the side fence where she had initially heard the noises. She saw another man jumping over the fence and walking down the driveway to the sidewalk. The two men then walked away together. Shortly thereafter, A.S. identified Rascon as the man who had attempted to climb through the gap above the security gate, and Goodman as the man who had jumped the fence and joined him.

Officer Padilla testified it would have been challenging for A.S. to see Goodman climbing the side fence from the security gate, but not impossible

---

[2] Since the underlying facts in this case are only relevant with respect to Rascon's challenge to the denial of his motion to sever, we summarize them as they were known to the trial court at the time it denied the severance motion following the preliminary hearing on January 8, 2019. (See *People v. Elliot* (2012) 53 Cal.4th 535, 552 (*Elliot*)), discussed *infra*.

for her to see a leg swing over. He did not measure the gap Rascon was attempting to climb through but stated it would be hard to get inside without really squeezing. He described Rascon as tall and lanky.

## B. *Goodman's April 2017 Residential Burglary*

On April 27, 2017, Antioch Police Officer Bledsoe was dispatched to an apartment complex on Sycamore Drive in Antioch at approximately 9:44 a.m. Officer Bledsoe was traveling eastbound on Sycamore when he observed a white male, later identified as Goodman, rounding the corner and being pursued by a woman wielding a broom. The woman, C.D., directed the officer's attention to Goodman and exclaimed, " 'That's him.' " Goodman was taken into custody. C.D. explained to the officer that she was in her kitchen when she noticed Goodman standing inside her apartment with a hatchet. She screamed, and he fled. Officer Bledsoe swept the second-floor apartment and discovered an open window in the bedroom and a window screen lying outside on the ground. Nothing was found missing from the apartment.

C.D. told Officer Bledsoe that, as she was chasing Goodman out of the apartment building, she came across an individual identified as Marcus Dukes who stated to her: " 'I told him he went into the wrong house.' " Dukes also told Goodman to run so he wouldn't get in trouble. C.D. surmised that the two men might have something to do with the apartment next door to hers, which allowed transients to come in and out. Officer Bledsoe spoke to the apartment manager, who stated that approximately 30 minutes before the incident, Dukes and another African-American man asked to enter the apartment next door to C.D.'s to retrieve Dukes's belongings. When interviewed, Goodman reported that he was approached by an African-American man on the street who asked for help entering his girlfriend's apartment to retrieve some of his belongings while the girlfriend was at

work.  He identified this person as Dukes.  At a follow-up interview the next day, C.D. reported that, after the incident with Goodman, Dukes had forced his way into the apartment next door.

## C.    *Pretrial Matters*

In January 2019, both Rascon and Goodman were charged by information with felony first-degree burglary with a person present based on the December 2018 incident (§ 459, count one).  Count one was enhanced by allegations that the offense was a violent felony (§ 667.5, subd. (c)), and that the defendants were ineligible for probation (§ 462, subd. (a)) and if convicted, must serve their sentence in state prison (§ 1170).  Goodman was additionally charged under count two with felony first-degree burglary with a person present based on the April 2017 incident (§ 459), which was enhanced by the same allegations as count one.  The information included several special allegations related to Rascon's 1999 conviction for robbery (§ 211), which were later stricken by the prosecutor.

Prior to the jury trial in this matter, Rascon's attorney filed a motion to sever counts or codefendants.  Although he conceded that count two involving only Goodman could be joined with count one under section 954, defense counsel asked the trial court to exercise its discretion to sever the counts, sever the codefendants, or bifurcate the counts.  Specifically, counsel argued that the facts regarding Goodman's alleged April 2017 residential burglary were likely to inflame the jury against Rascon, causing a finding of guilt by association.  Counsel for Goodman also requested that the defendants be severed, arguing that the evidence against Rascon as to count one was more definitive than the evidence against Goodman.  Goodman's attorney also objected to the weaker 2017 case being joined with the stronger 2018 offense.  The trial court denied both motions to sever.  Although the issue was

4

apparently discussed in chambers, the court did not put its reasoning on the record.

## D.     *Jury Verdict and Sentencing*

On April 4, 2019, the jury found both Rascon and Goodman guilty as charged.  At sentencing on April 26, 2019, the trial court denied probation and sentenced Rascon to four years in state prison, the middle term.  The trial court declined to imposes a number of fines and fees based on Rascon's inability to pay but did impose a $40 court operations assessment (§ 1465.8) and a $30 court facilities assessment (Gov. Code, § 70373), stating that those fees could not be waived.  Rascon timely appealed.

## II.  DISCUSSION

## A.     *Denial of Motion to Sever*

On appeal, Rascon argues that the trial court's refusal to sever either counts or defendants was an abuse of discretion and a violation of his constitutional right to a fair trial.  We find no merit to these claims.

"Our Legislature has expressed a strong preference for joint trials." (*People v. Souza* (2012) 54 Cal.4th 90, 109 (*Souza*).)  "Joinder is ordinarily favored because it avoids the increased expenditures of funds and judicial resources that may result from separate trials . . . [and], therefore, 'is the course of action preferred by the law.' " (*People v. Simon* (2016) 1 Cal.5th 98, 122 (*Simon*).)  Indeed, the California Constitution expressly provides that it "shall not be construed by the courts to prohibit the joining of criminal cases as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (a).)

We review a trial court's decision not to sever for abuse of discretion based on the record when the motion is heard.  (*Elliot, supra*, 53 Cal.4th at p.

5

552.)[3]  Whether a trial court abuses its discretion in denying severance depends on the particular circumstances of each case.  (*Simon, supra*, 1 Cal.5th at p. 123.)  "Where, as here, the statutory requirements for joinder are met, a defendant must make a 'clear showing of prejudice' to establish that the trial court abused its discretion in denying the motion."  (*Id.* at pp. 122-123.)  Finally, "even if the trial court's ruling was proper as a matter of state law, we will reverse the judgment if the defendant shows that joinder of the charges actually resulted in ' " 'gross unfairness' " ' amounting to a denial of due process."  (*Id.* at p. 123; *Ervin, supra*, 22 Cal.4th at p. 69 ["a reviewing court may reverse a conviction when, because of consolidation, ' "gross unfairness" ' has deprived the defendant of a fair trial"].)

Section 1098 provides in pertinent part:  "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials."  The court's discretion to order severance of defendants is guided by certain nonexclusive factors " 'such that severance may be appropriate "in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." ' "  (*Souza, supra*, 54 Cal.4th at p. 110.)  "A prejudicial association justifying severance will involve circumstances in which the evidence regarding one defendant might make it likely the jury would convict that defendant of the charges and, further, more likely find a codefendant guilty based upon the relationship between the two rather than upon the evidence

---

[3] If further developments occur during trial that a defendant believes justify severance, he or she must renew the motion to sever.  (*People v. Ervin* (2000) 22 Cal.4th 48, 68 (*Ervin*).)  Rascon did not do so in this case.

6

separately implicating the codefendant." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 152 (*Letner*).)

We begin with the observation that, pursuant to section 1098, the trial court was *required* to try the two defendants jointly for the December 2018 burglary unless it found that the presence of certain factors made such joinder inappropriate. Indeed, since Rascon and Goodman were charged as co-perpetrators of the 2018 burglary, this charge presented a " 'classic' case" for a joint trial. (See *People v. Keenan* (1988) 46 Cal.3d 478, 499-500 ["A 'classic' case for joint trial is presented when defendants are charged with common crimes involving common events and victims" ].) Moreover, other factors that might warrant severance were not present in the record at the time the trial court rendered its decision. There was no incriminating confession, conflicting defenses, or any indication that co-defendant Goodman would give exonerating testimony at a separate trial. (See *People v. Massie* (1967) 66 Cal.2d 899, 917.) Nor was there a likelihood of confusion resulting from evidence on multiple counts, as the co-defendants were charged under a single, straightforward joint count, and Goodman's charge under count two was similarly straightforward. (See *Souza*, *supra*, 54 Cal.4th at p. 110.) Thus, we see no abuse of discretion in the trial court's decision to jointly try Rascon and Goodman for the December 2018 burglary.

We similarly find no merit to Rascon's argument that the joinder of charges was an abuse of discretion. "Under section 954, '[a]n accusatory pleading' may charge 'two or more different offenses of the same class of crimes or offenses, under separate counts.' " (*Elliot*, *supra*, 53 Cal.4th at p. 551.) As Rascon acknowledges, the two charged burglary offenses are crimes of the same class, thus satisfying the statutory requirement for joinder. Nonetheless, "[s]ection 954 also provides . . . that the trial court, acting 'in the

interests of justice and for good cause shown, may in its discretion order that the different offenses . . . be tried separately.'  In exercising that discretion, a trial court should consider (1) whether the evidence relating to the various charges would be cross-admissible in separate trials, (2) whether some of the charges are unusually likely to inflame the jury against the defendant, (3) whether a weak case has been joined with a strong case or with another weak case, and (4) whether one of the charges is a capital offense or the joinder of the charges converts the matter into a capital case." (*Elliot*, *supra*, 53 Cal.4th at p. 551.)

Here, neither charge involved a capital offense, and Rascon concedes that the evidence regarding Goodman's prior act of petty theft would have been admissible against Goodman in both burglary cases under Evidence Code section 1101, subdivision (b), to prove intent.[4]  In addition, we do not perceive either charge as particularly stronger or weaker than the other, or unusually likely to inflame the jury.  The primary evidence in each case was the eyewitness testimony of the resident whose home had been breached. Both burglaries appeared poorly planned and executed, evincing a lack of criminal sophistication.  Neither burglary involved violence or other egregious conduct beyond the entering of the residence, and nothing was actually stolen.  While Goodman was carrying a small hatchet in the April 2017 burglary, there was no evidence that he used it in a menacing way. Indeed, after the close of the prosecutor's case, the trial court granted the defense motion to strike the enhancement for personal use of a deadly weapon for precisely this reason.

---

[4] The court gave a limiting instruction to the jury stating that this evidence only related to Goodman and only related to whether Goodman had the intent to commit a theft when he committed a burglary.

In the end, the crux of Rascon's argument is that joining the two charges provided evidence that Rascon was associating with a man who had previously committed precisely the sort of offense with which Rascon was charged, thereby inviting guilt by association. However, based on the record before the trial court at the time it denied the severance motion, it did not appear likely that the jury was in danger of finding Rascon guilty "based upon the relationship between [Goodman and Rascon] rather than upon the evidence separately implicating [Rascon]." (*Letner*, *supra*, 59 Cal.4th 99 at p. 152.) The evidence against Rascon in the December 2018 burglary was compelling. He was clearly identified by A.S. attempting to climb over the iron security gate to an enclosed porch, with the top part of his body squeezed through a tight gap between the security gate and the decorative finish attached to the porch roof. It is difficult to conceive of an innocent explanation for such behavior, especially when there was a package sitting inside the gate on the porch. And as soon as he was confronted by A.S., he withdrew and walked away.

On the other hand, the evidence against Goodman in the 2017 burglary was that he had entered an apartment residence through a window, possibly with the intent to help an acquaintance retrieve some property rather than with an intent to steal.[5] When Goodman was confronted by C.D., he ran away and was then chased by the victim. Whatever the jury thought of Goodman, it would convict or acquit Rascon based on the strength of the testimony of A.S., whom defense counsel was free to cross-examine at trial. Under such circumstances, we cannot say that the trial court abused its

---

[5] The evidence against Goodman in his participation of the 2018 burglary is arguably weaker. He was seen hanging around A.S.'s property and possibly jumped the fence to join Rascon after the aborted burglary.

discretion in refusing to sever the two counts. Stated another way, Rascon has failed to make the " 'clear showing of prejudice' " necessary to establish that the trial court abused its discretion in denying the motion. (See *Simon*, *supra*, 1 Cal.5th at pp. 122-123.)

For similar reasons, we see no evidence that joinder of the charges actually resulted in ' " 'gross unfairness' " ' amounting to a denial of due process. (*Simon*, *supra*, 1 Cal.5th at p. 123; *Ervin*, *supra*, 22 Cal.4th at p. 69.) "In determining whether joinder resulted in gross unfairness, we have observed that a judgment will be reversed on this ground only if it is reasonably probable that the jury was influenced by the joinder in its verdict of guilt." (*Simon*, *supra*, 1 Cal.5th at pp. 129-130.) The evidence offered to prove Rascon's guilt in the December 2018 burglary was straightforward and distinct from the evidence implicating Goodman in the two crimes charged, making juror confusion unlikely. Moreover, as discussed above, the evidence was strong and based on an eyewitness identification of Rascon, and Rascon's counsel had every opportunity to cross-examine the witness at trial. Considering Rascon's trial as a whole, we conclude it was not grossly unfair, and thus joinder of the charges relating to the two burglaries did not result in a denial of due process.

## B.    *Fines and Fees*

While the trial court declined to impose a number of fines and fees in this case based upon Rascon's inability to pay, it did impose a $40 court operations assessment (§ 1465.8) and a $30 court facilities assessment (Gov. Code, § 70373). Citing this District's decision in *People v. Cowan* (2020) 47 Cal.App.5th 32 (*Cowan*), review granted June 17, 2020, S261952, as well as *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Rascon argues that the imposition of these assessments may violate state and federal

10

prohibitions regarding excessive fines as well as constitutional notions of due process. (See also *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) He suggests we remand the matter for the trial court to determine whether his inability to pay renders the imposition of those assessments unconstitutional. We conclude that Rascon has forfeited this claim.

Under ordinary rules of appellate procedure, the failure to object to the imposition of fees in the trial court forfeits the issue on appeal. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054 [noting the "traditional rule that a party must raise an issue in the trial court if they would like appellate review"]; see also *People v. Aguilar* (2015) 60 Cal.4th 862, 864 ["the appellate forfeiture rule applies to challenges to fees imposed at sentencing"].) After *Dueñas* was issued in January 2019, appellate courts have reiterated the requirement that a defendant must challenge the imposition of fines and fees in the trial court on grounds of inability to pay in order to preserve the issue on appeal. (See *Cowan*, *supra*, 47 Cal.App.5th at p. 50, rev. granted ["*upon proper objection*, the court must hold a hearing at which defendant will have an opportunity to bear his burden of proof on the issue of ability to pay," italics added]; *Kopp*, *supra*, 38 Cal.App.5th at p. 95, rev. granted [agreeing with *Dueñas* to the extent it holds that "due process 'requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments . . .' *if the defendant requests such a hearing*," italics added]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 ["Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed."].)

Sentencing in this case took place in April 2019, four months after *Dueñas* was decided, and it appears that the court and counsel were well acquainted with the decision as Rascon's ability to pay was raised, and the court determined that he did not have the ability to pay even the minimum restitution fine of $300 under section 1202.4. (See *Kopp*, *supra*, 38 Cal.App.5th at p. 95, rev. granted [noting that section 1202.4 generally " 'bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum' "].) Specifically, the court and defense counsel had the following colloquy: [THE COURT]: "Restitution fund fine is $300. The parole revocation fine is $300, but it is stayed. The Court is finding that there is an inability to pay those two fines. [¶] Am I right, [defense counsel]? [¶] [DEFENSE COUNSEL]: Yes. [¶] THE COURT: Okay. The court operation fee of $40 cannot be waived, so that is imposed. And the criminal conviction assessment fine cannot be waived, and that is $30. The probation report fee of $176, I find an inability to pay."

Defense counsel did not object to the imposition of the two assessments, which are reflected on the related minute order and abstract of judgment. In contrast, the minute order and abstract note that the restitution fines and probation report fee were waived based on inability to pay. Under these circumstances—where ability to pay was expressly raised and defense counsel nevertheless failed to object to the $70 in assessments—we conclude that any appellate challenge to the imposition of those assessments has been forfeited.

Anticipating this forfeiture finding, Rascon argues in the alternative that defense counsel's failure to object to the $70 in assessments constituted

12

ineffective assistance of counsel.[6] "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) Rascon asserts that there can be no rational tactical purpose for defense counsel's failure to object, but we disagree.

The record does not disclose why defense counsel declined to object to imposition of the two assessments at the April 2019 sentencing hearing, but we cannot say that counsel had no conceivable tactical purpose for his inaction. For example, the record indicates that, while Rascon was homeless at the time of the instant offense, he had over 20 years of experience as a heating, ventilation, and air conditioning (HVAC) technician and possessed a 401(k) account from which he was borrowing. Thus, defense counsel may have concluded that Rascon did have the ability to pay these minimal fees. (*Mai*, *supra*, 57 Cal.4th at p. 1009 [ineffective assistance of counsel unavailable on direct appeal unless there is *no* satisfactory explanation for counsel's failure to act].) We see no ineffective assistance.

### III. DISPOSITION

The judgment is affirmed.

---

[6] An ineffective assistance of counsel claim must be supported by a showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that the deficient performance prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692; *In re Welch* (2015) 61 Cal.4th 489, 514.)

13

_____

SANCHEZ, J.

We concur.

_____

MARGULIES, ACTING P.J.

_____

BANKE, J.

(A157158)